# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| RICHARD JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:09-cv-117 |
| | ) |
| ROSS ALLEN, | ) |
| | ) |
| Defendant. | ) |

## OPINION and ORDER

### I. INTRODUCTION

Plaintiff Richard Jackson ("Jackson") is suing Marion Police Department Detective Ross Allen ("Allen") under 42 U.S.C. § 1983.[1] Jackson's claims stem from events that occurred on December 16, 2008, while he was a pre-trial detainee at the Grant County Jail—in particular, an alleged physical altercation with Allen during an interrogation session. Jackson claims that Allen used excessive force against him and that he was punished without due process when he was kept in solitary confinement for thirty-six days after the incident without any formal charges and lost his telephone, visitation, and other privileges.[2]

Now before the Court is Allen's motion for partial summary judgment on the due process claim. (Docket # 35.) Allen apparently does not dispute that an "incident" occurred between

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] Jackson, who is currently incarcerated, originally filed a *pro se* complaint against Deputy Prosecuting Attorney William Meyers, Grant County Sheriff Darrell Himelick, Detective Ross Allen, Custody Captain Kevin Pauley, and Corporal Matt Ogden, alleging numerous constitutional deprivations. The Court screened the complaint pursuant to 28 U.S.C. § 1915A(a) and allowed the excessive force and due process claims to proceed against Himelick, Allen, and Pauley. Jackson has since retained counsel and the claims against Himelick and Pauley have been dismissed with prejudice. Accordingly, only the excessive force and due process claims against Allen remain.

Jackson and himself, but argues that he is not an employee of the Grant County Sheriff's Department and did not make the decision to keep Jackson in solitary confinement. Accordingly, Allen claims he cannot be liable because he had no personal involvement in the alleged due process violation as a matter of law. Jackson responds that Allen was personally involved, and thus liable, because he started the altercation that led to Jackson's solitary confinement without due process.

For the reasons provided in this Opinion and Order, Allen's motion for partial summary judgment will be DENIED.

## II. FACTUAL BACKGROUND[3]

On December 15, 2008, Jackson was a pretrial detainee at the Grant County Jail. On that day, a fight erupted in the Jail, and Jackson and the other inmates involved were each placed in solitary confinement. (Jackson Dep. 97-98.)

The next day, December 16, 2008, Allen came to the Jail to read Jackson an arrest warrant that had been issued for him. (Allen Aff. ¶ 5.) Jackson was taken from the isolation cell to an interrogation room on the administrative side of the Jail. (Jackson Dep. 18-19.) At this point, some type of altercation occurred between Jackson and Allen. Jackson asserts that when he told Allen and the other officers he wanted to leave the interrogation room, they began to physically assault him. (Compl. 6.) He claims that as a result of the assault, he suffered injuries such as a puffy mouth and eye and a cut lip. (Jackson Dep. 100.)

In his brief, Allen acknowledges that an "incident" occurred that day and, for purposes of

---

[3] For purposes of the present motion, the parties do not point to a genuine dispute about the recited material facts. Nevertheless, at the summary judgment stage, the facts must be viewed in a light most favorable to Jackson, the non-moving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

the present motion, does not challenge Jackson's characterization of events. (Def.'s Mem. 4.) Indeed, other than Jackson's Complaint and the allegations he makes in his deposition, the record offers no clues about what transpired during the interrogation.[4]

Following the incident, Jackson was returned to the isolation cell. (Jackson Dep. 99-100.) Allen did not have any further contact with Jackson while he was being held in the Grant County Jail, nor was he involved in the decision to keep Jackson in isolation. (Jackson Dep. 90, 114; Allen Aff. ¶ 7.) The other inmates responsible for the December 15, 2008, fight were released from solitary confinement within two weeks. (Jackson Dep. 145.) Jackson, however, was kept in isolation for a longer period of time, thirty-six days, and allegedly without any disciplinary charges against him. (Jackson Dep. 114.) Jackson claims, without challenge, that a Jail guard told him that he was being kept in the isolation cell because of the December 16, 2008, incident with Allen. (Jackson Dep. 150.) Accordingly, Jackson's damages, if any, stem, at least in part, from the extra time he spent in solitary confinement.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.

---

[4] Because Allen has not offered any contrary evidence about the December 16, 2008, incident, the Court must accept Jackson's version of the facts as true for purposes of ruling on the summary judgment motion—that is, that Allen physically assaulted him without provocation. *Payne*, 337 F.3d at 770.

1994). If the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the non-moving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. ANALYSIS

Allen bases his argument for summary judgment on the undisputed fact that he did not personally order Jackson to be kept in solitary confinement or have any input on the decision of the Grant County Jail officials to do so. (Def.'s Mem. 4; Pl.'s Resp. 2.) He points out that he is an employee of the Marion Police Department, not the Grant County Sheriff's Department, and he argues that Jail employees are responsible for disciplining the inmates in their custody. He maintains that because he did not make the decision to keep Jackson in solitary confinement or deny him any privileges, he had no personal involvement in the alleged due process violation as a matter of law.

In his response, Jackson does not argue that Allen's personal involvement in the due process violation stems from his making the decision to hold him in solitary confinement. Instead, he argues that "Allen's personal involvement was creating the very altercation which was used by the decision makers to place Jackson in [isolation]." (Pl.'s Resp. 2.)

Jackson's succinct argument, barren as it is of legal citation, is well-taken. To establish personal liability in a Section 1983 claim, a plaintiff must show a causal connection between the

4

acts complained of and the alleged constitution deprivation—that is, that the government official had some "personal involvement" in the violation. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009); *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). For example, personal involvement exists if the official knows about the conduct and facilitates it, approves it, condones it, or turns a blind eye to it. *Knight*, 590 F.3d at 463 (quoting *Johnson*, 444 F.3d at 583).

Personal involvement, however, does not necessarily mean direct participation in the alleged constitutional deprivation. "In constitutional tort cases as in other cases, 'a man [is] responsible for the natural consequences of his actions.'" *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). Courts have long recognized that an official may have personal involvement "if he sets in motion a series of events that [he] knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000); *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988); *Ortiz v. City of Chicago*, 686 F. Supp. 2d 782, 800 (N.D. Ill. 2010); *Sumner v. Town of Converse, Ind.*, No. 3:07-cv-1, 2007 WL 1435535, at *4 (N.D. Ind. May 11, 2007). An official is therefore personally involved if he acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge or consent. *Brokaw*, 235 F.3d at 1012. In constitutional torts, as in others, causation is generally a question of fact. *See Wisconsin Mut. Ins. Co. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006); *Pesek v. Marzullo*, 566 F. Supp. 2d 834, 841 (N.D. Ill. 2008).

Viewed through this legal prism, Allen is not entitled to summary judgment on his theory

5

that he did not have, as a matter of law, any personal involvement in the alleged due process violation. Although the parties agree that Allen did not give the actual order to hold Jackson in confinement for an extended period of time, the undisputed evidence (at least for the purposes of this motion) is such that a jury could conclude that Allen "set in motion" the chain of events that led to the alleged due process violation. Indeed, the Court is presented with only Jackson's version of the facts—that Allen assaulted him without provocation and, as a result of the so-called fight, Jail officials kept him in solitary confinement longer than his fellow inmates.

Legally phrased, therefore, a question of fact exists for the jury about whether Allen was personally involved in the constitutional deprivation; that is, whether Allen set in motion the chain of events that led the Grant County Jail officials to extend Jackson's solitary confinement and deny him his privileges. *See Brokaw*, 235 F.3d at 1012.

In the somewhat analogous case of *Bausch v. Sumiec*, 139 F. Supp. 2d 1029, 1038 (E.D. Wis. 2001), the plaintiff claimed that Sumiec, his former parole officer, and Sullivan, the former Secretary of the Wisconsin Department of Corrections, violated his rights under the First Amendment's Establishment Clause by compelling him to attend a religiously-oriented substance abuse treatment program. The plaintiff argued—and the defendants did not dispute—that Sullivan failed to change the Department's policies to comply with *Kerr v. Farrey*, 95 F.3d 472, 474-80 (7th Cir. 1996), in which the Seventh Circuit held that the state may condition parole on participation in a religiously-oriented treatment, only if the religiously-oriented treatment is not "the only choice available." Sullivan claimed that he was not personally involved in the alleged violation, however, because Sumiec, the parole officer, was directly responsible for managing the plaintiff's parole. Nevertheless, the Court held that

6

there was sufficient evidence for a jury to find personal involvement because Sullivan's failure to change the policy led to Sumiec's violation of *Kerr*. Similarly, here, it can be inferred that Allen set in motion the events that led to the Jail's extended isolation of Jackson without due process.

The case of *Ortiz v. City of Chicago*, 686 F. Supp. 2d 782, 799-800 (N.D. Ill. 2010), illustrates the other end of the causational pole. There, the plaintiff claimed, in part, that two prison employees unreasonably delayed her probable cause hearing. In finding no personal involvement, however, the Court noted that neither employee was involved in any of the administrative tasks that allegedly caused the delay or were even aware of the length of her detention. *Id*. at 800. Here, by contrast, Allen was undisputably involved in the activity, the assault, leading to Jackson's arguably foreseeable deprivation.

Indeed, in a jail environment, it is certainly reasonable to conclude—that is, it was legally foreseeable—that if an officer accuses a prisoner of starting a fight with that officer, the prisoner will end up being punished. *See generally Robenhorst v. Siemes Logistics & Assembly Systems, Inc.*, No. 05 C 3192, 2008 WL 656054, at *6 (N.D. Ill. Mar. 6, 2008) ("As the Seventh Circuit has stated, a defendant's conduct is the proximate cause of a plaintiff's injury if all events following that conduct, including any actions by the plaintiff, are its reasonably foreseeable results.") (quoting *Suzik v. Sea-Land Corp.*, 89 F.3d 345, 348 (7th Cir. 1996)); *Jones*, 856 F.2d at 993 ("[E]lementary principles of legal causation . . . are as applicable to constitutional torts as to common law torts."). Furthermore, it does not matter whether Allen foresaw the exact way in which Jackson would be harmed. RESTATEMENT (SECOND) OF TORTS § 435(1) ("If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither

7

foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.")

Therefore, on the present record, Allen is not entitled to partial summary judgment on the due process claim and his motion must be denied.

## V.  CONCLUSION

For the foregoing reasons, Allen's motion for partial summary judgment (Docket # 35) is DENIED.

SO ORDERED.

Enter for this 28th day of January, 2011.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
