**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **RICHARD JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:09-cv-117** |
| | ) | |
| **DETECTIVE ROSS ALLEN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

This matter is before the Court[1] on the fully-briefed motions *in limine* filed by the Defendant Detective Ross Allen (Docket # 65, 69, 85) and the fully-briefed motions *in limine* filed by Plaintiff Richard Jackson (Docket # 68, 84, 98.) For the reasons provided, the parties' respective motions *in limine* will be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Richard Jackson is suing Marion Police Department Detective Ross Allen under 42 U.S.C. § 1983.[2] Jackson's claim stems from events that occurred on December 16, 2008, while he was a pretrial detainee at the Grant County Jail—in particular, an alleged physical altercation with Allen in an interrogation room at the Jail after Allen read him an arrest warrant.

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] Jackson, who is currently incarcerated, originally filed a *pro se* complaint against Deputy Prosecuting Attorney William Meyers, Grant County Sheriff Darrell Himelick, Detective Ross Allen, Custody Captain Kevin Pauley, and Corporal Matt Ogden, alleging numerous constitutional deprivations. (Docket # 1.) The Court screened the complaint pursuant to 28 U.S.C. § 1915A(a) and allowed the excessive force and due process claims to proceed against Himelick, Allen, and Pauley. (Docket # 5.) Jackson has since retained counsel, and all claims against Himelick and Pauley have been dismissed with prejudice. (Docket # 11, 41, 42.) On April 18, 2011, Jackson's due process claim against Allen was dismissed. (Docket # 75, 76.) Accordingly, only the excessive force claim against Allen remains.

Jackson claims that Allen used excessive force against him in violation of the Fourteenth Amendment to the United States Constitution.

## II. NATURE OF AN ORDER *IN LIMINE*

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (citation omitted). "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion in limine is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial"). Indeed, the Seventh Circuit Court of Appeals has noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion *in limine* is not necessarily the final determination on the admissibility of the evidence discussed in the motion. *See Wilson*, 182 F.3d at 570-71. Instead, an order on a motion *in limine* is essentially an advisory opinion, "merely speculative in effect." *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## III. ALLEN'S MOTION *IN LIMINE*

*A. Unopposed Portions of Allen's Motion* in Limine *(Nos. 1-5, 7, 9, 12, 14, 16, 17)*

Jackson does not object to Allen's motions *in limine* concerning settlement attempts, excluding non-party witnesses from the courtroom, indemnification, insurance, attorney's fees, testimony about the lack of a surveillance video, evidence or argument that Allen should not have served the arrest warrant, other publicized incidents of the use of excessive force by police, any evidence whether Allen entered into a confidential informant agreement and such agreement's validity, references to witnesses being interviewed by the FBI, and evidence indicating a breach of the Grant County Jail's policies and procedures. Consequently, Allen's motions are GRANTED as to these matters.

*B. Evidence Regarding Jackson's Alleged Injuries from the Incident (Nos. 6, 10, 18)*

Allen seeks to prevent lay testimony from Jackson about purported medical conditions that he claims resulted from the December 16, 2008, altercation. Allen contends that Federal Rule of Evidence 701 allows only experts to make the complex medical determinations necessary to uncover the causes of Jackson's alleged injuries. *See, e.g.*, *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010). He concedes, however, that Jackson may testify about the subjective symptoms he experienced, such as pain or sadness. *Id.*

Indeed, under Rule 701 a lay witness may offer opinion testimony to the extent that it is: "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge . . ." Therefore, a lay witness is entitled to testify about his "own perceptions, including the physical and emotional effects of the defendant['s] alleged conduct." *Christmas*, 691 F. Supp. 2d at 821. He "cannot, however, offer medical

opinions that require scientific, technical, or other specialized knowledge and . . . not give any complex medical diagnoses or opine on any long term medical conditions." *Id*. (citation and internal quotation marks omitted).

Consequently, Jackson may testify about his own perceptions of his physical and mental health, before and after the incident. This includes recounting any pain, fear, or anxiety he experienced during those times. *See Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (allowing plaintiff to describe pain resulting from attack where there is "no . . . complicated question of medical causation"); *United States v. Cravens*, 275 F.3d 637, 640 (7th Cir. 2001) (allowing lay opinion testimony to establish existence of drug or alcohol problem); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196-98 (3d. Cir. 1995) (recognizing lay testimony about health as "quintessential Rule 701 opinion testimony"); *Holleman v. Duckworth*, 700 F.2d 391, 395 (7th Cir. 1983) (permitting plaintiff's testimony about his own medical symptoms).

No witness, however, shall be permitted to opine that the altercation proximately caused Jackson's alleged mental and physical health problems or offer a medical diagnosis of his alleged injuries. *Cravens*, 275 F.3d at 641. ("Although a lay person may readily observe a [health] problem, the *causatio*n of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision."); *see also Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) (stating that plaintiff, who alleged that his teeth feel out due to lack of exercise when in solitary confinement, was incompetent to testify on the causal relation, if any, between exercise and healthy gums); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (holding that lay testimony is not sufficient to establish plaintiff's claim that secondhand smoke caused his symptoms). Jackson can only

lay the groundwork for the jury to infer causation by testifying about his present health conditions and whether they appeared prior to the incident. *Hendrickson*, 589 F.3d at 892-93 (plaintiff may describe the altercation and any ensuing pain or suffering he experienced at that time). Accordingly, Allen's motion with respect to evidence or testimony addressing the causation of Jackson's alleged injuries is GRANTED.

### *C. Any Medical Opinion Testimony that Grant County Jail Medical Staff Should Have Provided Different Medical Treatment (No. 8)*

Next, Allen moves to bar Jackson from eliciting any testimony or admitting evidence that the Grant County Jail medical staff should have provided better or different medical treatment, contending that it is irrelevant and without foundation. Jackson, however, argues that such information is relevant to the issue of excessive force in that he purportedly would have received more medical care had he not been put in segregation after the altercation. Thus, as Jackson sees it, this line of testimony and evidence is necessary to explain to the jury why there may be little or no medical documentation in the days following the altercation. In reply, Allen emphasizes that Jackson was seen by a nurse at the Grant County Jail within hours following the December 16, 2008, altercation, and thus contrary to Jackson's suggestion, there *is* medical documentation of his purported injuries.

Indeed, presenting any argument that the medical care by the Grant County Jail, who is not a defendant in this matter, was inadequate or delayed will waste time, result in undue delay, and may confuse the jury. In short, the Court wishes to avoid the likelihood of a "trial within a trial" concerning the adequacy and competence of the medical care rendered by the Grant County Jail after the December 16, 2008, altercation. *See, e.g.*, *Soller v. Moore*, 84 F.3d 964, 968 (7th Cir. 1996). Therefore, the probative value of this evidence is substantially outweighed

by the risk of unfair prejudice, *see* Fed. R. Evid. 403, and Allen's motion *in limine* to exclude it is GRANTED.

*D. References to Certain Purported Statements, Conduct, and Commissions by Allen and Prosecutor William Myers (No. 11)*

Allen also seeks to prohibit references to any of the following purported statements, conduct, or commissions: Allen's alleged failure to provide Jackson with Miranda warnings, the violation of Jackson's right against double jeopardy, the alleged verbal abuse by Allen and Prosecutor William Myers, the alleged delay of medical treatment at the Grant County Jail, the alleged violation of Jackson's right to have an incident documented, and the failure of the Grant County Jail employees to take photographs of his injuries. Allen explains that all of the above claims were dismissed by this Court pursuant to 28 U.S.C. § 1915A(a) for failure to state a cause of action. (Docket # 5.)

Jackson contends, however, that although these statements, conduct, or commissions are not cause of actions, they are still relevant pieces of evidence to his excessive force claim. More particularly, he states that they demonstrate Allen's "motive and malicious intent" when dealing with him, which is relevant to the issue of punitive damages.

Of course, the jury is assigned the ultimate task of determining whether the force that Allen used was unreasonable from the perspective of a reasonable officer facing the same circumstances that Allen faced. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Accordingly, Jackson may introduce evidence of the circumstances leading up to Allen's use of force. Jackson is precluded, however, from stating, inferring, or suggesting that those circumstances amounted to or led to a constitutional claim. Any reference, inference, or suggestion to these dismissed claims would be prejudicial to Allen, potentially confuse the jury, and would lead to

limiting instructions and the waste of judicial resources. *See, e.g., Soller*, 84 F.3d at 968 (recognizing the need to prevent a "trial within a trial"). Therefore, the probative value of this evidence is substantially outweighed by the risk of unfair prejudice, *see* Fed. R. Evid. 403, and Allen's motion *in limine* is GRANTED with respect to the dismissed claims.

*E. Allegations of a Police Officer"Code of Silence" (No. 13)*

Allen seeks to prohibit any reference by Jackson that police officers generally lie, conspire, cover-up, or otherwise maintain a "code of silence" to protect fellow officers. Indeed, there is no allegation of conspiracy here, *see Sanders v. City of Indianapolis*, 837 F. Supp. 959, 962-64 (S.D. Ind. 1992), and the phrase "code of silence" is unduly prejudicial. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). Therefore, Allen's motion *in limine* is GRANTED.

*F. Undisclosed Witnesses or Exhibits (No. 15)*

Next, Allen moves to preclude Jackson from calling any undisclosed witnesses or referring to any undisclosed exhibits. Jackson does not object to this motion, except to the extent it would prevent him from using appropriate rebuttal evidence or witnesses. Indeed, undisclosed witnesses may testify in rebuttal because the need for rebuttal witnesses cannot always be anticipated and depends on what is introduced by the adversary. *United States v. Gasparik*, 141 F. Supp. 2d 361, 368-69 (S.D.N.Y. 2001). Therefore, Allen's motion with respect to undisclosed witnesses or exhibits is GRANTED, except to the extent it is necessary that Jackson introduce such evidence in rebuttal.

*G. Evidence or Testimony that the Warrant Was Served Shortly After Jackson's Criminal Defense Counsel Withdrew (No. 19)*

Allen seeks to prohibit Jackson from presenting evidence or testimony that he served

Jackson with the arrest warrant shortly after Jackson's criminal defense counsel withdrew his representation. Jackson objects, claiming that the information is somehow relevant because it "addresses the source of the confrontation" between Jackson and Allen. (Pl.'s Resp. 7.)

Allen's motion in this respect is GRANTED, because the withdrawal of Jackson's criminal defense counsel prior to the service of the arrest warrant is, at least at this point, seemingly irrelevant to whether Allen used excessive force against Jackson. *See* Fed. R. Evid. 401. If the timing of that withdrawal is later shown to be relevant, the Court can then assess its probative value in accordance with Federal Rule of Evidence 403.

### *H. The Fact that Jackson Was Not Charged with a Crime as a Result of the Altercation (No. 20)*

Finally, Allen moves to preclude Jackson from presenting any evidence or testimony that he was not charged with a crime as a result of the December 16, 2008, altercation, contending that such information is irrelevant and its probative value is substantially outweighed by the danger of unfair prejudice. Jackson disagrees, arguing that the information suggests that his conduct was insufficient to prompt the instigation of charges, and thus that it is relevant to Allen's assertion that he used force in "self defense".

Of course, whether or not Jackson was "later charged with a crime is irrelevant when deciding whether the amount of force [Allen] used [against him] was excessive." *Starks-Harris v. Taylor*, No. 1:08-cv-176, 2009 WL 2970382, at *3 (N.D. Ind. Sept. 4, 2009). Even more significantly, however, introduction about the lack of criminal charges against Jackson creates a risk of substantial prejudicial effect, as the jury may equate the decision not to charge Jackson with the determination of the reasonableness of Allen's use of force. *See* Fed. R. Evid. 403. Allen's motion is therefore GRANTED with respect to this evidence.

## IV. JACKSON'S MOTION *IN LIMINE*

### *A. Unopposed Portions of Jackson's Motions* in Limine *(Nos. 5, 7-10, 15, 17, 18)*

Allen does not object to Jackson's motions *in limine* concerning allegations that Jackson participated in gang activity; attorney fees; settlement negotiations; tax considerations; "send a message" arguments; Darrell Himelick's and Kevin Pauley's written responses to discovery requests, including their responses to requests for production; and any prior adjudications or dismissals in this suit. Consequently, Jackson's motions will be GRANTED as to these matters.

### *B. Narrative Reports, Supplemental Reports, and Incident Reports by Allen and Law Enforcement Professionals (No. 1)*

Jackson seeks to bar any narrative reports by Allen or other law enforcement professionals, claiming they are biased, prejudicial, and constitute inadmissible hearsay. In response, Allen contends that the reports are admissible under Federal Rules of Evidence 803(6) (records of regularly conducted activity) and 803(5) (recorded recollection).

The reliability of police reports is "neither automatic nor presumed." *Downie v. Klincar*, 759 F. Supp. 425, 428 (N.D. Ill. 1991). "Police reports of any kind are 'inherently more subjective than laboratory reports of chemical tests, and . . . a police officer's description of events as he witnessed them lacks . . . objective certainty." *Id*. (citations omitted). "[T]hey may be demonstrably reliable evidence of the fact that an arrest was made, but they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true." *Id*. (citing *United States v. Bell*, 785 F.2d 640, 644 (8th Cir. 1986)). Indeed "such evidence is 'dripping with motivations to misrepresent' and accordingly lacks the trustworthiness necessary to qualify under the business records exception." *Id*. (citation omitted).

At this juncture, Jackson's motion *in limine* is GRANTED. Presumably, the narrative

reports may ultimately be admissible, at least in part, under Federal Rule of Evidence 803(8) as public records and reports, although certain hearsay statements within the reports may need to be redacted. Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained. Counsel are directed to confer in an effort to reach a stipulation concerning suitable redactions. Moreover, until Allen has laid a proper foundation, such narrative reports may not be read into evidence under Rule 803(5).

*C. Jackson's Criminal Charges (No. 2)*

Next, Jackson moves to preclude any testimony or evidence about why he was incarcerated prior to the December 16, 2008, incident or whether he was ever charged after the incident, asserting that this information is inflammatory and unduly prejudicial

As concluded earlier in connection with Allen's motion *in limine*, any criminal charges subsequent to December 16, 2008, are excluded. Allen asserts, however, that the armed robbery charge pending against Jackson on December 16, 2008, and the dealing in cocaine charge in the arrest warrant that Allen read to Jackson just before the altercation, are relevant to the circumstances (that is, what Allen knew) at the time of the altercation. Apparently Allen had arrested Jackson on prior occasions and investigated him for the armed robbery charge. "[The totality of the circumstances] includes information which the officer had at the time of his actions, but not uncovered later." *Deering v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999). Accordingly, the pending armed robbery and dealing in cocaine charges are admissible for the limited purpose of establishing what Allen knew at the time of the encounter.

Therefore, the motion is GRANTED as to Jackson's criminal charges, if any, brought subsequent to December 16, 2008, but DENIED with respect to the pending charges prior to

such date.

*D. Jackson's Criminal Record (No. 3)*

Jackson also seeks to preclude all testimony or evidence of his criminal record and "bad acts", arguing that Federal Rule of Civil Procedure 404(b) prohibits the admissibility of other crimes, wrongs, or acts in order to try to prove the character of the person or to show action in conformity therewith. In response, Allen argues that this evidence is admissible (1) to show what Allen knew at the time of the encounter, (2) for purposes of impeachment under Federal Rule of Evidence 609, and (3) under Federal Rule of Evidence 404(b) to show Jackson's motive to resist police and as evidence of a habit of resistance.

First, as concluded with respect to prior criminal charges, to the extent that Allen was aware of Jackson's prior criminal history or prior "bad acts" at the time of the encounter, that evidence is admissible for the limited purpose of establishing what Allen knew at the time of the encounter as that knowledge would have been important in calibrating his physical response to Jackson's conduct. *See id*.

Second, Jackson's convictions may also be admissible under Federal Rule of Evidence 609 for the purpose of attacking Jackson's truthfulness. Although Allen does not specify the potentially impeaching convictions, Rule 609(a)(1) provides that evidence of a witness's criminal conviction is admissible, subject to Rule 403, "if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . . ." Convictions are not admissible, however, "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances

substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).[3]

Allen's argument, however, that Jackson's prior "bad acts" are admissible under Federal Rule of Evidence 404(b) to show that a motive to resist or habit of resistance is unpersuasive, as Jackson's motive is not an issue in this case. The slight probative value, if any, of Jackson's potential motive to resist or habit of resistance against police officers is substantially outweighed by the risk of undue prejudice and confusion if these issues were paraded before the jury. Fed. R. Evid. 403.

Therefore, at this stage, Jackson's motion to exclude his criminal convictions and prior "bad acts" is GRANTED under Federal Rule of Evidence 609(b) with respect to any convictions outside the ten-year limit that Allen was unaware of at the time of the encounter, until the Court has the opportunity to gauge their prejudicial effect in the context of the trial. Fed. R. Evid. 403. The motion *in limine* is otherwise DENIED in that Jackson's other convictions and prior "bad acts" are admissible for the limited purposes of establishing Allen's knowledge at the time of the encounter or impeachment.

*E. Law Enforcement Department's Policies and Procedures (No. 4)*

Jackson also seeks to bar testimony or evidence of any law enforcement department's policies and procedures, asserting that whether Allen's actions were compliant with any policies and procedures is irrelevant. Indeed, the Seventh Circuit Court of Appeals has definitively stated that whether an officer's conduct conformed with the internal policies and procedures of a law enforcement department is irrelevant to a jury's determination of whether such officer's

---

[3] The Seventh Circuit Court of Appeals has "defined both the starting and ending points for the calculation of Rule 609(b)'s ten-year time limit. The clock starts at the witness's release from any physical confinement, or in the absence of confinement, the date of the conviction." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) (citation omitted). "[T]he end date of the time limit for impeaching convictions is the start of the trial at which the witness is testifying." *Id*. (citation omitted).

actions were "objectively reasonable" under the Constitution. *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) ("[B]ecause police rules, practices and regulations vary from place to place and from time to time, they are an unreliable gauge by which to measure the objectivity and/or reasonableness of police conduct."); *see Legg. Pappas*, 383 Fed. Appx. 547, 550 (7th Cir. June 16, 2010) (unpublished); *Beckham v. Stiles*, No. 06 C 978, 2009 WL 3336096, at *5 (E.D. Wis. Oct. 15, 2009) (collecting cases).

Allen does not object to Jackson's motion to exclude evidence of any law enforcement department's policies and procedures, except, however, with respect to the specific training that he received in the use of force. The content of that specific training, however, would also be irrelevant to whether Allen's conduct was "objectively reasonable." Accordingly, Jackson's motion *in limine* concerning a law enforcement department's policies and procedures is GRANTED.

### *F. Any Allegations that Jackson Had Altercations with Other Individuals Prior to or After the December 16, 2008, Encounter (No. 6)*

Next, Jackson seeks to preclude testimony or evidence that he had verbal or physical altercations with other individuals prior to or after his December 16, 2008, encounter with Allen, arguing such evidence is highly prejudicial and inflammatory. Allen does not object to the exclusion of any altercations that occurred after December 16, 2008, but contends that any prior altercations are admissible under Federal Rule of Evidence 404(b) to prove motive or habit. In addition, Allen asserts that evidence of the December 15, 2008, altercation that took place among Jackson and other detainees at the Grant County Jail is relevant, since it resulted in his placement in solitary confinement and Jackson alleges as part of his damages that his solitary confinement was extended as a result of his physical encounter with Allen.

As concluded *supra*, the slight probative value, if any, of Jackson's potential motive to resist or habit of resistance against police officers is substantially outweighed by the risk of undue prejudice and confusion if these issues were paraded before the jury. Fed. R. Evid. 403. Therefore, Allen's argument under Rule 404(b) is unpersuasive.

As to the December 15, 2008, altercation in particular, although Allen may introduce evidence that Jackson was in solitary confinement prior to the encounter, he may not introduce evidence of the reason for his placement there, as the probative value of such evidence is outweighed by the substantial risk of prejudicial effect. *See* Fed. R. Evid. 403. Admission of such evidence could lead to a "trial within a trial" concerning the December 15, 2008, altercation, resulting in undue delay and jury confusion. *See, e.g., Soller,* 84 F.3d at 968. Of course, the Court may reconsider the probative value of this evidence in the context of trial if Jackson presents evidence that his solitary confinement was extended as a result of the December 16, 2008, altercation. In particular, Allen may be permitted to show that Jackson's detention was not extended, but rather, lengthy at the outset because of the nature and extent of his involvement in the December 15, 2008, incident.

Therefore, Jackson's motion is GRANTED as to altercations after December 16, 2008, and any prior altercations for the purpose of establishing motive or habit under Rule 404(b).[4]

*G. Claims, Argument, or References that Allen Acted in Self Defense* (*No. 11)*

Jackson also seeks to bar Allen from arguing that he acted in self defense against

---

[4] Allen does not argue that he had knowledge of Jackson's prior physical or verbal altercations with individuals at the time of the December 16, 2008, encounter, and thus that such altercations should be admitted to show what Allen knew at the time of the encounter. However, as concluded *supra* with respect to Jackson's pending charges or prior criminal convictions and "bad acts", to the extent Allen had knowledge of such altercations at the time of the encounter, the altercations would be admissible for the limited purpose of establishing what Allen knew at the time. *Deering*, 183 F.3d at 650.

Jackson on the premise that Allen failed to plead it as an affirmative defense. Jackson's motion is unpersuasive. The jury must decide whether Allen's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Allen faced, *Graham*, 490 U.S. at 397, and Allen is free to argue that those circumstances include the proposition that Jackson was the aggressor in the encounter. Therefore, Jackson's motion is DENIED in this respect.

### *H. Alleged Incidents of Jackson's Misconduct or Rules Violations Prior to or After December 16, 2008 (No. 12)*

Jackson seeks to preclude evidence or testimony of any alleged incidents of misconduct or rules violations by Jackson prior to or after the December 16, 2008, encounter. Allen objects to this motion only to the extent that it would preclude evidence of Jackson's convictions or prior "bad acts" as previously discussed. Therefore, this motion is GRANTED subject to the rulings *supra* on Jackson's convictions and prior criminal charges, "bad acts", and altercations.

### *I. Written Witness Statements, Written Communications and Letters, and the DVD of Jackson's Deposition (Nos. 13, 14, and 16)*

Jackson seeks to bar the written statement of Martin Freiszell dated July 3, 2009; any written communications and letters to or from Jackson or third parties; and the DVD of his deposition testimony. Allen does not object to this request but wants to reserve the right to use such evidence for impeachment should the need arise. Accordingly, subject to a reservation for impeachment purposes, the motion is GRANTED.

## V. CONCLUSION

For the foregoing reasons, the Defendant's motions *in limine* (Docket # 65) and the Plaintiff's motions in limine (Docket # 68) are each GRANTED IN PART and DENIED IN PART as set forth herein.

It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury. Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for the 25th day of April, 2011.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge